# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GERALD PEETERS,**

    **Plaintiff,**

    v.                                               **Case No. 18-CV-738**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Gerald Peeters alleges that he has been disabled since February 11, 2014, due to "Disorders of Back (Discogenic & Degenerative), Affective (Mood) Disorders, Lower Back Problems, and Depression." (ECF No. 12 at 6.) In July 2013 he applied for disability insurance benefits. (*See* Tr. 21.) After his application was denied initially (Tr. 59-74) and upon reconsideration (Tr. 75-90), a hearing was held before an administrative law judge (ALJ) on November 11, 2015 (Tr. 39-58). On January 12, 2016, the ALJ issued a written decision concluding Peeters was not disabled. (Tr. 21-31.) The Appeals Council denied Peeters' request for review on May 5, 2016. (Tr. 7-10.)

On June 15, 2016, Peeters filed an action in this court challenging the ALJ's January 2016 decision. (Tr. 564-65.) On March 7, 2017, the Honorable William C. Griesbach signed an order approving the parties' joint stipulation to remand for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). (Tr. 534.) On remand, the Appeals Council instructed the ALJ to: (1) "[g]ive further consideration to [Peeters'] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations;" (2) "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Peeters'] occupational base;" (3) "ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy;" (4) "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p);" (5) "offer [Peeters] the opportunity for a new hearing;" (6) "take any further action needed to complete the administrative record;" and (7) "issue a new decision." (Tr. 542.)

A second hearing was held before the same ALJ on January 9, 2018. (Tr. 461-503.) On March 14, 2018, the ALJ issued a written decision, again concluding that Peeters was

not disabled[1] (Tr. 434-48), which became the final decision of the Commissioner. *See* 20 C.F.R. § 404.984 ("[W]hen a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case."). This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 6, 7), and the matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Peeters "has not engaged in substantial gainful activity since February 11, 2014, the amended alleged onset date." (Tr. 437.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121

---

[1] Peeters also applied for supplemental security income benefits on June 24, 2016 (Tr. 646-52), which was denied initially and upon reconsideration (Tr. 545-63). In his March 2018 opinion, the ALJ concluded that Peeters "is not disabled under sections 216(i) and 223(d)" and "under section 1614(a)(3)(A)" of the Social Security Act. (Tr. 448.)

(7th Cir. 2014.) The ALJ concluded that Peeters has the following severe impairments: "degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, depressive disorder, posttraumatic stress disorder (PTSD), generalized anxiety disorder, and learning disabilities." (Tr. 437.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d) and 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Peeters "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 437.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the claimant's ability to perform both physical and mental work-related activities on a regular and continuing basis despite his impairments. *Moore*, 743 F.3d at 1121. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function"

4

assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Peeters has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Peeters] is limited to occasional climbing of ladders, ropes, scaffolds, ramps, or stairs; [he] is limited to occasional stooping, crouching, kneeling, or crawling and occasional overhead reaching with the right upper extremity; [he] is limited to unskilled work performing simple, routine, and repetitive tasks; he is limited to occasional decision making and occasional changes in work setting; he is limited to occasional interaction with the public and coworkers; and he is limited to work that allows individually performed work tasks and no fast-paced production work (end of day quotas are permitted).

(Tr. 438-39.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Peeters' past relevant work was as a construction worker and grounds keeper. (Tr. 446.) The ALJ concluded that he "is unable to perform any past relevant work." (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. At this step the ALJ concluded that, considering Peeters' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Peeters can perform. (Tr. 447.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Peeters' age, education, work experience, and RFC could perform the

5

requirements of food preparation, mail clerk, laundry worker, and hand packager. (*Id.*) After finding that Peeters could perform work in the national economy, the ALJ concluded that he is not disabled. (Tr. 447-48.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, whether the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law the court cannot affirm the ALJ's decision regardless

of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

**ANALYSIS**

Peeters argues that the ALJ erred (1) in evaluating and giving weight to the opinions of consultative examiner Sandra King, Ph. D., and (2) by failing to address Peeters' limitations in concentration, persistence or pace.

**I.   Dr. Sandra King**

Dr. King completed a consultative mental status examination of Peeters in January 2014. (Tr. 368-72.) She opined that Peeters suffers from major depressive disorder, generalized anxiety disorder, and rule out learning disorder not otherwise specified. (Tr. 371.)   She concluded:

> Mr. Peeters is able to understand directions and should be able to remember and carry out simple instructions. He id [sic] not predicted to have difficulties in responding appropriately to supervisors and co-workers. His ability to maintain concentration and attention appears to be mildly impaired. He is expected to have moderate difficulties withstanding routine work stress and adapting to change, along with severe difficulties being able to physically handle a job. Should he be awarded disabilities benefits, he would not need the assistance of a protective payee, as he is able to manage his own funds.

(*Id.*) Although the ALJ found Dr. King's assessment of Peeters' physical limitations to be outside the scope of her area of expertise, he gave "great weight" to the remainder of her January 2014 opinion. (Tr. 444.)

Dr. King completed a second consultative mental status examination of Peeters in September 2016. (Tr. 847-50.) She opined that Peeters suffers from major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and specific learning disorder with impairment in reading (dyslexia). (Tr. 849.) She concluded:

> Mr. Peeters is able to understand directions and should be able to remember and carry out simple instructions. He is not predicted to have difficulties in responding appropriately to supervisors or co-workers, even though he is often irritable due to pain. His ability to maintain concentration and attention appears to be mildly impaired. He is expected to have severe difficulties withstanding routine work stress and adapting to change, along with severe difficulties being able to physically handle a job. Should he be awarded disability benefits, he would not need the assistance of a protective payee, as he is able to manage his own funds.

(Tr. 849-50.) The ALJ once again found Dr. King's assessment of Peeters' physical limitations to be outside the scope of her area of expertise. (Tr. 444.) He also found that Dr. King's "finding that Peeters would have severe difficulties coping with routine work stress and adapting to changes" is "inconsistent with the nearly normal mental status examination findings, the lack of specialized treatment, the limited treatment history, and [Peeters'] refusal to follow through with treatment recommendations, which included participation in therapy and psychotropic medication." (Tr. 444-45.) Thus, the ALJ gave Dr. King's September 2016 opinion only "partial weight." (Tr. 445.)

Peeters argues that the ALJ erred in rejecting Dr. King's September 2016 finding that Peeters would have severe difficulties coping with routine work stress and adapting to changes. (ECF No. 12 at 16-18.) However, substantial evidence supports the ALJ's

8

conclusion. Dr. King's mental status examination findings in January 2014 and September 2016 were essentially identical, and she provided no explanation for her decision to increase the limitation from "moderate" in January 2014 to "severe" in September 2016.

Dr. King's September 2016 finding is also inconsistent with the opinions of the state-agency psychologists. Richard Waranch, Ph. D., and Jan Jacobson, Ph. D., opined that Peeters has moderate limitations in responding appropriately to changes in the work setting (Tr. 78, 559), and Jack Spear, Ph. D., opined that Peeters has no limitations in that area (Tr. 88). As such, the ALJ did not err in rejecting Dr. King's September 2016 finding that Peeters would have "severe difficulties withstanding routine work stress and adapting to change." *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Campbell v. Berryhill*, No. 2:17-cv-02068-SLD-EIL, 2018 WL 5289492, at *12 (C.D. Ill. Sept. 27, 2018) ("Inconsistency with the record, including medical evidence, … is a permissible basis for discounting opinion testimony.").

Peeters also argues that "the [ALJ's RFC determination] did not provide any explanation from how a limitation [] to 'occasional changes in work setting' reflected Dr. King's finding that Peeters would be moderately limited to work-place changes." (*Id.* at 12.) However, as the Commissioner points out, there is no inconsistency between Dr. King's finding and the ALJ's RFC limitation with respect to Peeters' ability to adapt to change. (ECF No. 17 at 11-12.) Dr. Waranch found that Peeters is moderately limited in

9

his ability to respond appropriately to changes in the work setting and opined in his mental RFC assessment that "[Peeters] is capable of adapting to change/pressures in the work environment as long as changes/pressure were not *constant*." (Tr. 71.) (Emphasis added.) The ALJ relied on Dr. Waranch's assessment in forming the RFC determination, and no doctor's opinion indicates greater limitations than those found by the ALJ. *See Dudley v. Berryhill*, __ F. App'x __, 2019 WL 2152547, at *4 (7th Cir. May 16, 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."). As such, substantial evidence supports the ALJ's RFC determination with respect to Peeters' moderate limitations in adapting to change.

Peeters further argues that the ALJ failed to consider Dr. King's assessment that Peeters has a moderate limitation in coping with routine work stress. (ECF No. 12 at 16.) However, the ALJ addressed Peeters' moderate limitation in coping with stress by limiting him to only "occasional decision making and occasional changes in work setting," "occasional interaction with the public and coworkers," "individual performed work tasks," and "no fast-paced production work." (Tr. 438-39; *see Mischler v. Berryhill*, __ F. App'x __, 2019 WL 1299948, at *5 (7th Cir. March 20, 2019) ("Here, the ALJ limited [plaintiff] to (1) 'simple routine and repetitive tasks' in a low-stress job, *defined as* one involving only occasional (2) decision-making, (3) changes in the work setting, (4) and interaction with the public or coworkers[.]") (emphasis added).) As such, contrary to

10

Peeters' argument, the ALJ addressed Peeters' moderate limitation by limiting him to a low-stress job.

## II. Concentration, Persistence, or Pace

Peeters argues that the ALJ erred in finding that he had moderate difficulties in his ability to sustain concentration, persistence, or pace, while failing to include those limitations in the RFC or questions posed to the vocational expert. (ECF No. 12 at 22-34.) It is well-established that "[b]oth the RFC and the hypothetical question presented to the [vocational expert] must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler*, 2019 WL 1299948 at *5 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). However, "[t]he ALJ need not use this exact terminology, so long as the phrasing 'specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform.'" *Id.* (quoting *O'Connor-Spinner*, 627 F.3d at 619) (alteration in original). "[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see Dudley*, 2019 WL 2152547 at *4 ("[A]n ALJ may rely on a doctor's narrative where it adequately translates those worksheet observations.").

State-agency psychologists Dr. Waranch, Dr. Spear, and Dr. Jacobson assessed Peeters' mental RFC. Dr. Waranch opined that Peeters is moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and

11

concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (Tr. 69-71.) He explained in narrative form:

> [Peeters] is capable of understanding and remembering simple, 2-3 step instructions as well as some detailed instructions but would have difficulty with more complex instructions.
>
> [Peeters] is capable of carrying out simple, 2-3 step instructions and maintaining attention and concentration when doing so. Capable of maintaining attendance and completing a workweek. [Peeters] would have problems carrying out detailed tasks and maintaining attention and concentration for such tasks on a reg[ular] basis.
>
> [Peeters] is capable of interacting with the public as long as contacts are intermittent and not prolonged. No evidence of problems getting along with coworkers and supervisors.
>
> [Peeters] is capable of adapting to change/pressures in the work environment as long as changes/pressure [are] not constant.

(*Id.*)

Dr. Spear opined that Peeters is moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent

12

pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. (Tr. 87-88.) He explained in narrative form:

> [Peeters] is capable of understanding and remembering simple, 2-3 step instructions as well as some detailed instructions. He may have difficulty with more complex instructions. The longitudinal evidence of record does not indicate marked ongoing limitations in [understanding and memory].
>
> The longitudinal evidence of record does not indicate marked ongoing limitations in [concentration and persistence].
>
> [Peeters] is capable of interacting with the public as long as contacts are intermittent and not prolonged. No evidence of problems getting along with co-workers and supervisors. The longitudinal evidence of record does not indicate marked ongoing limitations in [social interaction].

(*Id.*)

Dr. Jacobson opined that Peeters is moderately limited in his ability carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (Tr. 558-59.) She explained in narrative form:

> [Peeters] is able to sustain attention for simple, repetitive tasks for extended periods of two hour segments over the course of routine workday/workweek within acceptable attention, concentration, persistence and pace tolerances. Unable to do so for moderately detailed/complex tasks requiring sustained attention.

> [Peeters] retains the mental capacity to sustain the basic demands associated with relating adequately with supervisors and co-workers, but could not sustain these same demands in working routinely with the general public. He is able to maintain adequate personal grooming and hygiene.
>
> [Peeters] is able to tolerate simple changes in routine, avoid hazards, travel independently, and make/carry out simple plans.

(*Id.*)

The ALJ gave these opinions great weight (Tr. 443-44), and included their stated limitations in the hypothetical question posed to the vocational expert:

> …. He would be limited to unskilled work performing simple, routine and repetitive tasks. He would be limited to only occasional decision making and occasional changes in his work setting. He would be limited to occasional interaction with the public, occasional interaction with his coworkers, no fast-paced production work. End of day quotas would be acceptable and work that allowed him to perform individual work tasks.

(Tr. 492.) Because he relied on the opinions of the state agency psychologists who translated Peeters' moderate limitations in concentration, persistence, or pace into an RFC of simple, repetitive tasks, the ALJ did not err in his hypothetical to the vocational expert. *See Dudley*, 2019 WL 2152547 at *3-4; *Burmester*, 920 F.3d at 511-12; *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).

Peeters contends that the state-agency psychologists' narrative explanations are flawed. (ECF No. 12 at 18-22.) He alleges that Dr. Waranch's and Dr. Jacobson's written narratives failed to account for various limitations that they noted in answering the mental RFC assessment questions. However, Peeters "mistakenly presumes that the

psychologists' answers to the [questions] outweigh the narrative opinion section." *Dudley*, 2019 WL 2152547 at *4; *see also Lora S.S. v. Comm'r of Social Sec.*, No. 18-cv-0961-DGW, 2019 WL 2224069, at *7 (S.D. Ill. May 23, 2019) ("The ALJ is not automatically required to include a moderate limitation in concentration, persistence, or pace in every case in which a state agency consultant checks that box."). The state-agency forms specifically provide:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This decision(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation).

(Tr. 69, 87, 558.)

Peeters also alleges that Dr. Spear's narrative explanation concerning concentration and persistence "provided no limitations relevant to the hypothetical question or RFC finding." (ECF No. 12 at 21.) While it is true that Dr. Spear did not provide an adequate narrative explanation (Tr. 87-88), it is clear that the ALJ relied on Dr. Spear's assessment in conjunction with Dr. Waranch's and Dr. Jacobson's assessments. (*See* Tr. 443.) Even if the ALJ's reliance on Dr. Spear's opinion was flawed, any error was harmless. *See Jozefyk v. Berryhill*, __ F.3d __, 2019 WL 2021615, at *4 (7th Cir. 2019 May 8, 2019). Peeters does not identify any limitations that the ALJ omitted and should have included in his hypothetical, and no doctor's opinion indicates greater limitations than

15

those found by the ALJ. *See Dudley*, 2019 WL 2152547 at *4 ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."); *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question [to the vocational expert] be supported by the medical evidence in the record.").

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **affirmed** and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of May, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge